IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:26-cv-01818-CNS

ANDRY AFRICANO PULIDO,

     Petitioner,

v.

JUAN BALTAZAR, in his official capacity as Warden of the Denver Contract Detention Facility;
GEORGE VALDEZ, in his official capacity as Field Office Director, Denver Field Office of U.S. Immigration and Customs Enforcement;
TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement;
MARKWAYNE MULLIN, in his official capacity as Secretary of U.S. Department of Homeland Security; and
TODD BLANCHE, in his official capacity as Attorney General of the United States,

     Respondents.

---

## ORDER

---

Before the Court is Petitioner's fully briefed Petition for Writ of Habeas Corpus. ECF No. 1. For the reasons set forth below, the Court GRANTS the petition and orders Petitioner's immediate release. In granting the petition the Court presumes familiarity with this case's factual and procedural background, including the allegations set forth in the petition. At bottom, Petitioner was paroled in this country pending resolution of her underlying immigration proceedings, and was detained in April 2026 pursuant to 8 U.S.C. § 1225(b). *See, e.g., id.* at 1; ECF No. 8-1 at 2 (declaring that Petitioner was "paroled . .

1

. into the United States until October 21, 2024"); *id.* at 3 (declaring Petitioner "is detained pursuant to 8 U.S.C. § 1225(b)").

## I.    DISCUSSION

The parties' briefs raise two core issues: whether Petitioner is subject to mandatory detention under § 1225(b)(1), and next whether "even if Petitioner is not subject to detention under § 1225(b)(1), she is subject to mandatory detention under § 1225(b)(2)." ECF No. 8 at 8 (citation modified). The Court addresses these issues in turn, ultimately agreeing with Petitioner that no provision in § 1225(b) controls.

***Petitioner's detention is not governed by § 1225(b)(1).*** The parties' first dispute concerns whether Petitioner's detention under § 1225(b)(1) is proper even though Petitioner has been paroled in the United States. *Compare* ECF No. 8 at 5 ("Section 1225(b) governs Petitioner's detention, not Section 1226(a). Because Petitioner presented at a port of entry seeking admission to the United States . . . she is an arriving alien. Despite being paroled into the United States, she continues to be an arriving alien."), *with* ECF No. 10 at 3 ("The question is whether § 1225(b)(1), a provision governing inspection and expedited-removal processing of certain noncitizens arriving in the United States, governs Respondents' later decision to arrest and detain her in Colorado after she had been paroled into the country. It does not."). The Court agrees with Petitioner that § 1225(b)(1) does not govern Petitioner's detention.

Several courts have addressed this issue against substantially similar factual backgrounds. *See, e.g., Rafibaev v. Noem*, No. 26–cv–00461–PAB, 2026 WL 607559, at *5 (D. Colo. Mar. 4, 2026) ("Here, petitioner was in the country for almost two years when

2

he was re-detained. Thus, he is detained pursuant to § 1226(a)." (citation modified));

*Daza v. Albarran*, No. 25–cv–10214–RFL, 2026 WL 81518, at *3 (N.D. Cal. Jan. 12, 2026) ("So mere termination of Petitioner's parole does not result in her mandatory detention." (citation modified)); *Qasemi v. Francis*, No. 25–cv–10029 (LJL), 2025 WL 3654098, at *6 (S.D.N.Y. Dec. 17, 2025) ("Applying the plain meaning of 'arriving in the United States' here, there can be no doubt that upon his parole into the interior of the country, [the petitioner] had arrived in the United States and was no longer a noncitizen arriving in the United States. It would try any plain understanding of the term 'arrival' to classify an individual like [the petitioner] who has lived and worked in the United States for over a year prior to his re-detention as an arriving alien." (citation modified)); *Capote Zamora v. Mullin*, No. 26–cv–00538–PAB, 2026 WL 1026810, at *4 (D. Colo. Apr. 16, 2026) (collecting cases). The Court finds the reasoning of these cases persuasive and adopts it. Accordingly, the Court agrees with Petitioner that § 1225(b)(1) does not govern her detention. *See, e.g.,* ECF No. 10 at 3 ("[Petitioner] cannot be 'arriving' in the United States after she was released on parole into the interior of the country. Therefore, upon her parole into the interior of the country, Pulido had arrived in the United States and was no longer a noncitizen arriving in the United States."); *id.* at 4. In other words, Respondents are wrong to argue that "Petitioner is subject to mandatory detention under § 1225(b)(1)." ECF No. 8 at 6 (citation modified)).

As a final observation regarding this first issue, 8 U.S.C. § 1182(d)(5)(A) does not disturb the Court's conclusion. *Compare id.* at 5, *with* ECF No. 8 at 7 (citing § 1182(d)(5)(A)). As indicated above, numerous courts have rejected this argument. *See,*

*e.g., Qasemi*, 2025 WL 3654098, at *10–12; *Rafibaev*, 2026 WL 607559, at *4 ("[T]he Court finds that § 1182(d)(5)(A) does not require petitioner to be detained under the same statutory status as his original detention." (citation modified)); *Khubiev v. Baltasar*, No. 25–cv–03955–STV, 2026 WL 864237, at *6 (D. Colo. Mar. 30, 2026); *Capote Zamora v. Mullin*, No. 26–cv–00538–PAB, 2026 WL 1026810, at *3 (D. Colo. Apr. 16, 2026); *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 302 (E.D.N.Y. 2025), *appeal dismissed*, No. 26–219, 2026 WL 1208948 (2d Cir. Feb. 25, 2026) ("Thus, Section 1182(d)(5)(A) suggests that rather than reverting to any prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal." (citation modified)). And as at least one court has observed, "the 'returned to the custody' language of [§ 1182(d)(5)(A)] does not affirmatively authorize detention." *Daza*, 2026 WL 81518, at *3 (citation modified).

The Court discerns no problem in these courts' thorough and persuasive analyses of this issue, and the resultant conclusion that § 1182(d)(5)(A) does not demand mandatory detention for individuals, such as Petitioner, who have been paroled in this country. *See, e.g.,* ECF No. 10 at 5; *Qasemi*, 2025 WL 3654098, at *10 ("[T]hat result is not mandated by the text of Section 1182(d)(5)(A). The provision does not state that a noncitizen is returned to the 'status' they held upon their parole, that they revert to status as an 'arriving alien,' or that they must be detained." (citation modified)). Therefore, the Court joins them in concluding that, against this case's factual backdrop, § 1182(d)(5)(A) does not demand mandatory detention. *See, e.g., id.* at *11–12 ("Putting these pieces

4

together, the termination by expiration of [the petitioner's] parole returned him to the 'custody' of DHS pursuant to the INA. Because he was paroled, and because he is not an arriving alien, he is no longer subject to the mandatory detention provision of Section 1225(b)(1). The outcome of this textual analysis is ultimately simple: absent ongoing parole status, Section 1182 mandates that [the petitioner] be treated just as the INA would treat any noncitizen previously granted parole and living in the United States. Therefore, any determination as to [the petitioner's] detention must be conducted under the discretionary framework of Section 1226(a)." (citation modified) (collecting cases)). *See also* ECF No. 10 at 5; *Rodriguez-Acurio*, 811 F. Supp. 3d at 302.

*Nothingwithstanding § 1225(b)(1)'s inapplicability, Petitioner is not subject to mandatory detention under § 1225(b)(2).* The parties' second dispute concerns the applicability of § 1225(b)(2)'s mandatory detention provision. *Compare* ECF No. 8 at 8, *with* ECF No. 10 at 6 ("[Petitioner] is not subject to 8 U.S.C. § 1225(b)(2) as an applicant for admission."). The Court agrees with Petitioner that § 1225(b)(2) does not mandate detention. *See, e.g.,* ECF No. 10 at 6. Three conditions must be met for this provision to apply. *See, e.g., Hernandez v. Baltazar*, No. 1:25–cv–03094–CNS, 2025 WL 2996643, at *5–6 (D. Colo. Oct. 24, 2025) ("For section 1225(b)(2)(A) to apply, several conditions must be met—in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" (citation modified)). Those conditions are not met here. *Cf.* ECF No. 8 at 9 (arguing that all three conditions are met here).

As Petitioner observes, courts have rejected the argument that Respondents advance here: That Petitioner is "seeking admission." ECF No. 8 at 9. In the words of one such court, written against a similar factual background: "Petitioner has been in the United States for significantly longer than two years. Petitioner's pending asylum application does not change the court's conclusion that § 1225 does not apply to him." *Rabaev v. Baltazar*, No. 1:26–cv–00811–SBP, 2026 WL 911279, at *2 (D. Colo. Apr. 2, 2026). *See also Tumba v. Francis*, 813 F. Supp. 3d 394, 400 (S.D.N.Y. 2025); *Daza*, 2026 WL 81518, at *4 ("Respondents nonetheless argue that Petitioner is subject to mandatory detention under Section 1225(b)(2), which requires detention of those 'seeking admission.' The statute does not define the term 'seeking admission,'" but this Court has previously interpreted the phrase to refer to 'arriving alien[s]' and not to those 'who have been in the country for years.'" (citation modified)).

The Court finds the reasoning of these cases persuasive and applies it here. *See also id.* (collecting cases in support of this interpretation of § 1225(b)(2)). Accordingly, simply because Petitioner has filed an asylum application, *see* ECF No. 10 at 6, and had her parole revoked does not bring Petitioner under § 1225(b)(2)'s ambit. *See also id.* at 7 ("Respondents try to convert [Pettioner's] Asylum application into a present-tense act of 'seeking admission.' An Asylum application in removal proceedings is a request for protection from removal; it is not the same thing as seeking admission at inspection."); *Capote Zamora*, 2026 WL 1026810, at *3 ("Section 1225(b)(2)(A) applies to noncitizens who are applicants for admission and are seeking admission to the United States. The Court finds that, upon termination of his parole, petitioner did not become a noncitizen

6

seeking admission. An applicant 'seeking admission' is similarly positioned to one arriving and it necessarily follows that a noncitizen paroled into the country—i.e., a noncitizen residing in the United States—is not an arriving alien." (citation modified)).

\* \* \*

Having determined that no provision of § 1225 applies, the Court must determine what remedy is proper given that Petitioner is detained under § 1226. *See, e.g., Rafibaev*, 2026 WL 607559, at \*5. Having considered the parties' arguments as to this point, the Court agrees with Petitioner that immediate release is proper. This is not a case, for instance, where Petitioner failed to brief whether immediate release is an appropriate remedy. *Cf. id.* (denying request for immediate release and determining "a bond hearing is a more appropriate remedy" where the petitioner "provide[d] no argument for why [immediate release] is appropriate relief"). Petitioner has adequately argued why immediate release is a preferable remedy to ordering a bond hearing. *See, e.g.,* ECF No. 10 at 9.

To be sure, the Court has concluded that Petitioner's detention is improper a statutory matter, and for this reason declines to reach Petitioner's constitutional claim. *See, e.g., Singh v. Baltazar*, No. 1:26–cv–336–CNS, --- F. Supp. 3d ----, 2026 WL 352870, at \*6 (D. Colo. Feb. 9, 2026) ("If it is not necessary to decide more, it is necessary not to decide more." (citation modified)). But even so, immediate release is proper. Although Respondents argue that "if this Court orders habeas relief, the appropriate relief is a bond hearing where the Petitioner bears the burden of proof to justify release," ECF No. 8 at 14, Respondents advance *no* arguments or evidence that Petitioner presents a flight risk

7

or danger to the community. *Cf. Garcia Cortes v. Noem*, No. 1:25–cv–02677–CNS, 2025 WL 2652880, at *5 (D. Colo. Sept. 16, 2025). Accordingly, and given that Petitioner has been improperly detained, the Court agrees with Petitioner that immediate release is the appropriate remedy. *See, e.g., Murzi v. Noem*, No. 1:26–cv–00359–CNS, 2026 WL 395111, at *2 (D. Colo. Feb. 12, 2026); *Sidqui v. Almodovar*, No. 25–cv–9349 (VSB), 2026 WL 251929, at *17 (S.D.N.Y. Jan. 30, 2026).

## II.   CONCLUSION

Consistent with the above analysis, Petitioner's Petition for Writ of Habeas Corpus, ECF No. 1, is GRANTED.

It is FURTHER ORDERED that Respondents shall release Petitioner from custody immediately, but no later than within 48 hours of this Order, and may not impose any additional conditions of release or supervision beyond those she was subject to immediately prior to her recent detention. Respondents SHALL FILE a status report within THREE DAYS of this Order to certify compliance. Respondents are further ENJOINED AND RESTRAINED from re-detaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing, that Petitioner is a flight risk or danger to the community such that her physical custody is legally justified. At any such bond hearing, the government shall bear the burden of proof.

DATED this 21st day of May 2026.

BY THE COURT:

_____

Charlotte N. Sweeney
United States District Judge

8